UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

POLISH ARMY VETERANS OF AMERICA, INC.,
POLISH ARMY VETERANS OF AMERICA
DISTRICT NO. 2, INC., DOM, INC. a/k/a THE
POLISH NATIONAL HOME, and TEOFIL
LACHOWIZ,

                            Plaintiffs,

                    v.

MAREK STASIEWICZ,

                          Defendant.

-------------------------------------------------------------

**MEMORANDUM & ORDER**

20-CV-3419 (MKB)

MARGO K. BRODIE, United States District Judge:

     Plaintiffs Polish Army Veterans of America, Inc. ("PAVA"), Polish Army

Veterans of America District No. 2, Inc. ("District 2"), DOM, Inc. a/k/a the Polish National

Home ("DOM") and Teofil Lachowiz ("Lachowiz") commenced the above-captioned action

against Defendant Marek Stasiewicz on July 19, 2020, for defamation *per se*.  (Compl. ¶¶ 22–35,

Docket Entry No. 1.)  Plaintiffs seek a permanent injunction enjoining Defendant from making

further defamatory statements and also seek monetary damages of no less than $75,000, together

with interest, punitive damages and attorneys' fees and costs.[1]  (*Id.* ¶¶ 31, 34.)

---

[1]  Plaintiffs allege that the Court has subject matter jurisdiction pursuant to 28 U.S.C.
§ 1332(a)(1), because complete diversity of citizenship exists between the parties and the amount
in controversy exceeds $75,000, exclusive of interest and costs.  (Compl. ¶ 9.)  Defendant does
not dispute the Court's subject matter jurisdiction.  (*See generally* Def.'s Mot. to Dismiss
("Def.'s Mot."), Docket Entry No. 8.)

Defendant moves to dismiss the claim for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and Plaintiffs oppose the motion.[2]  For the reasons set forth below, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.[3]

PAVA is a not-for-profit corporation located in New York City, with regional districts across the United States, which regional districts are made up of chapters known as "Posts." (Compl. ¶ 1.)  District 2 is a New York not-for-profit membership organization located in New York City and is the largest of PAVA's regional districts, with Posts in New York, New Jersey and Connecticut.  (*Id.* ¶ 2.)  DOM is a privately owned corporation located in Brooklyn, New York, (*id.* ¶ 3), and Lachowiz is a New York State resident residing in the county of Queens.  (*Id.* ¶ 4.)  Defendant is a resident of Massachusetts and served as Secretary and then as the Vice-Commander of a PAVA Post located in Massachusetts until he was expelled from PAVA in March of 2019.  (*Id.* ¶ 5; *see also* Decl. of Teofil Lachowiz ("Lachowiz Decl.") ¶ 5, Docket Entry No. 13.)  In his capacity as an executive board member of PAVA, between 2015 and 2018,

---

[2]  (Def.'s Mot.; Pls.' Opp'n to Def.'s Mot. ("Pls.' Opp'n"), Docket Entry No. 12.)

[3]  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) ("[A] Rule 12(b)(2) motion . . . assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency." (quoting *Ball v. Metallurgie Hoboken–Overpelt*, S.A., 902 F.2d 194, 197 (2d Cir. 1990))); *see also Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 194 (E.D.N.Y. 2018) ("Where . . . personal jurisdiction is challenged by way of a motion pursuant to [Rule 12(b)(2)], the [c]ourt must 'assume[] the truth of the plaintiff's factual allegations . . . .'" (third alteration in original) (quoting *Dorchester Fin. Sec., Inc.*, 722 F.3d at 85)).

Defendant frequently traveled to New York City and the New York metropolitan area.[4]  (Compl. ¶ 6.)

### a.    Allegedly defamatory letters

Plaintiffs allege that Defendant widely emailed four defamatory letters written in Polish (the "Letters"), causing damage to Plaintiffs' reputation within the Polish American community. (*See id.* ¶¶ 19, 29 (citing List of Email Recipients, annexed to Compl. as Ex. F, Docket Entry No. 1-7).)

### i.    The July 11, 2019 letter

On July 11, 2019, following Defendant's expulsion from PAVA, Plaintiffs allege that Defendant emailed "numerous individuals involved in PAVA, District 2 and DOM," making "several false and clearly derogatory characterizations of Plaintiffs as 'a mafia,' 'the mafia family,' 'this mafia group,' 'thieves,' using 'mafia methods' and lacking 'honor, ambition and loyalty'" (the "July 2019 Letter").  (*Id.* ¶ 13 (citing July 2019 Letter, annexed to Compl. as Ex. A, Docket Entry No. 10-2).)  The July 2019 Letter accused Plaintiffs of "perpetrating 'financial scams,' including an 'illegal sale' of a building and insinuated that Plaintiffs misappropriated the

---

[4]  In four identical affidavits providing additional factual allegations appended to Plaintiffs' opposition, (*see* Lachowiz Decl.; Decl. of Mark Chroscielewski, Docket Entry No. 14; Decl. of Sylwia Solie, Docket Entry No. 15; Decl. of Zygmunt Bielski, Docket Entry No. 16), Plaintiffs allege that "on or about early October [of] 2018, Defendant attended an approximately three-hour PAVA national executive board committee meeting at PAVA's headquarters in New York City" and that "Defendant's role as secretary at the May [of] 2018 General Assembly of PAVA, which tasked him with recording the minutes of the proceedings, was addressed and his failure, *inter alia*, to submit the minutes thereof."  (Lachowiz Decl. ¶ 9.)  Plaintiffs further allege that "[d]uring this meeting, Defendant voiced his grievances concerning PAVA."  (*Id.*)  In addition, Plaintiffs allege that "[f]rom 2015 through 2018, Defendant attended and participated in several PAVA national executive board committee meetings at PAVA's New York City headquarters" and was "responsible for recording the minutes at PAVA's General Assembly convention in 2015 and 2018."  (*Id.* ¶ 12.)  Because the affidavits are nearly identical, the Court cites to only one affidavit.

three million dollars ($3,000,000) from said sale." (*Id.* ¶ 14.)  In addition, the July 2019 Letter

"claimed [Lachowiz] was a communist political officer who [sought] 'to destroy Polonia,' like

PAVA and DOM, 'from the inside (the Fifth Column).'" (*Id.*)

### ii.   The December 12, 2019 letter

Plaintiffs contend that Defendant again emailed individuals involved in PAVA, District 2

and DOM, on December 12, 2019, stating that the "PAVA organization is governed by a

potential mafia" (the "December 2019 Letter").  (*Id.* ¶15 (citing Dec. 2019 Letter, annexed to

Compl. as Ex. B, Docket Entry No. 10-3).)  The December 2019 Letter also made "accusations

concerning 'financial scams,'" "[m]anipulation of discussion regarding dismissals of former

PAVA members, [that] no appeal of the punished members was read, and [that PAVA was]

filling . . . vacancies in the Executive Committee of PAVA without voting."  (*Id.* (first alteration

in original).)

### iii.   January 17, 2020 letter

On January 17, 2020, Defendant emailed a third letter to individuals involved in PAVA,

District 2 and DOM, alleging that Anton Chroscielewski,[5] the president and chairman of DOM

and member and executive officer of PAVA and District 2, was "'a mafioso,' . . . had 'one goal,

power and money[,]' 'found a new source of income, PAVA' and 'managed everything that was

possible' from DOM" (the "January 2020 Letter").  (*Id.* ¶¶ 7, 16 (citing Jan. 2020 Letter,

annexed to Compl. as Ex. C, Docket Entry No. 10-4).)  The January 2020 Letter also alleged that

"Plaintiffs exemplify 'how a mafia acts.'" (*Id.* ¶ 16.)  In addition, in violation of the rules of the

PAVA National Executive Board and the PAVA Constitution, Defendant attached to the January

---

[5]  Chroscielewski is a New York State resident residing in the county of Queens.
(Compl. ¶ 7.)  Plaintiffs allege that he was also libeled by Defendant but was unable to join this
action due to his age and physical infirmities.  (*Id.*)

2020 Letter "the confidential minutes of an informal meeting of PAVA's National Executive Board" and circulated "the attached minutes and a translation[] to numerous individuals who were not members of the [National Executive Board] or privy to its proceedings . . . ." (*Id.* (citing Jan. 18, 2019 Letter, annexed to Compl. as Ex. D, Docket Entry No. 10-5).)

### iv.   March 2, 2020 letter

Plaintiffs allege that on March 2, 2020, Defendant emailed a fourth letter to individuals involved in PAVA, District 2 and DOM, likening Plaintiffs' conduct to that seen in "communist times" and accusing Lachowiz of "'manipulat[ing]' PAVA members, 'conceal[ing]' material information and unfairly remov[ing] members from PAVA" (the "March 2020 Letter"). (*Id.* ¶ 18 (citing Mar. 2020 Letter, annexed to Compl. as Ex. E, Docket Entry No. 10-6).)

### b.   Plaintiffs' cease and desist letter

In response to the Letters, Plaintiffs sent Defendant a cease and desist letter on March 10, 2020. (*Id.* ¶ 20 (citing Cease and Desist Letter, annexed to Compl. as Ex. G, Docket Entry No. 10-8).)  Defendant refused to comply and responded to Plaintiffs, indicating that he had "no intention of issuing an apology since [Chroscielewski], [Lachowiz] and other PAVA General Board members do, in fact, use the PAVA Constitution for their private agenda." (*Id.* ¶ 21 (citing Def.'s Resp., annexed to Compl. as Ex. H, Docket Entry No. 1-9).)

## II.   Discussion

### a.   Standard of review

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent.*, *Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v.*

*Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  The showing a plaintiff must make to meet that

burden is governed by a "sliding scale," which "varies depending on the procedural posture of

the litigation."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)

(quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  If a

defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need

only make a *prima facie* showing that the court possesses personal jurisdiction over the

defendant."  *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x

740, 742 (2d Cir. 2020) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.

2001)); *see also Holmes v. Apple*, 797 F. App'x 557, 559 (2d Cir. 2019) ("A plaintiff has the

burden of establishing personal jurisdiction over an entity against which it seeks to bring suit,

and to survive a motion to dismiss for lack of such jurisdiction, 'a plaintiff must make a *prima*

*facie* showing that jurisdiction exists.'" (quoting *Penguin Grp. (USA) Inc.*, 609 F.3d at 34–35));

*Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (same).  Prior to

discovery, a plaintiff need only plead "an averment of facts that, if credited by the ultimate trier

of fact, would suffice to establish jurisdiction over the defendant."  *Holmes*, 797 F. App'x at 559

(quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also*

*Dix v. Peters*, 802 F. App'x 25, 27 (2d Cir. 2020) ("Where the district court grants a Rule

12(b)(2) motion without an evidentiary hearing, we credit the plaintiff's averment of

jurisdictional facts as true." (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,

567 (2d Cir. 1996))); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir.

2015) ("A *prima facie* case requires non-conclusory fact-specific allegations or evidence

showing that activity that constitutes the basis of jurisdiction has taken place." (citing *Jazini v.*

*Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998))).  After discovery, the plaintiff's "*prima*

*facie* showing must be factually supported." *Dorchester Fin. Sec., Inc.*, 722 F.3d at 85 (quoting

*Ball*, 902 F.2d at 197). "Conclusory allegations based only on information and belief are not

sufficient" to provide such factual support. *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381,

383 (E.D.N.Y. 2010) (citing *Jazini*, 148 F.3d at 183–84).

In resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule

12(b)(2), a district court may consider materials outside the pleadings. *Dorchester Fin. Sec.*, 722

F.3d at 86 (citing *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010));

*see also UTC Fire & Sec. Ams. Corp., Inc. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 370

(S.D.N.Y. 2012) ("In deciding a motion to dismiss for lack of personal jurisdiction, the court has

discretion to proceed either upon written submissions or through a full evidentiary hearing on the

merits . . . ." (internal quotation marks and citation omitted)); *see also O'Neill v. Asat Tr. Reg.*

*(In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 676 (2d Cir. 2013) (noting that

jurisdictional discovery had taken place and requiring evidentiary support for jurisdictional

allegations); *McGlone*, 740 F. Supp. 2d at 384 (looking to record developed once jurisdictional

discovery as to defendant was complete to decide a motion to dismiss). In addition, the court

must "construe the pleadings and any supporting materials in the light most favorable to the

plaintiffs." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci IV)*, 732 F.3d 161, 167 (2d Cir.

2013) (citing *Chloé*, 616 F.3d at 163); *see also Grundstein v. Eide*, 598 F. App'x 45, 46 (2d Cir.

2015) (citing *DiStefano*, 286 F.3d at 84). However, the court need not "accept as true a legal

conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d

at 673 (quoting *Jazini*, 148 F.3d at 185).

### b.   The Court cannot exercise personal jurisdiction over Defendant

Defendant argues that the Court cannot exercise personal jurisdiction over him because: (1) "[he] is a permanent resident of the state of Massachusetts for over [thirty] years"; (2) "[he] does not travel to any other states due to . . . age, physical condition, and the COVID[-]19 pandemic"; (3) he last visited New York in October of 2018; and (4) "[a]ll the letters from Defendant, with the questions to Plaintiffs and included by the Plaintiffs in the affidavit, were written on [his] personal computer located in the home of Defendant in Massachusetts."  (Def.'s Mot. ¶¶ 1–4.)

Plaintiffs argue that the Court has specific jurisdiction over Defendant under New York's long-arm statute, New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") § 302(a)(1), and that the exercise of personal jurisdiction by the Court comports with due process.  (Pls.' Opp'n 11–13.)

"There are two types of personal jurisdiction: specific and general."  *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014).  General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum.  *Id.* ("A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation — even those entirely unrelated to the defendant's contacts with the state.")  Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011))).  Under New York law, courts exercise specific jurisdiction pursuant to N.Y.

C.P.L.R. § 302 and general jurisdiction pursuant to N.Y. C.P.L.R. § 301.[6]

Under CPLR § 302(a), there are four bases for extending specific personal jurisdiction

over a non-domiciliary defendant.  *Bah v. Apple Inc.*, No. 19-CV-3539, 2020 WL 614932, at *4

(S.D.N.Y. Feb. 10, 2020); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir.

2007) (describing bases for jurisdiction under the New York long-arm statute).  Section

302(a)(1) permits courts "to exercise personal jurisdiction over [a] non-domiciliary" where the

"cause of action aris[es] from any of the acts enumerated in the [statute]" and the defendant

"transacts any business within the state or contracts anywhere to supply goods or services in the

state."  N.Y. C.P.L.R. § 302(a)(1); *see also Kurzon LLP v. Thomas M. Cooley L. Sch.*, No. 12-

CV-8352, 2014 WL 2862609, at *4 (S.D.N.Y. June 24, 2014) (defining circumstances under

which a court may exercise specific personal jurisdiction over non-domiciliary defendant

pursuant to section 302(a)(1)).  In addition, even if a plaintiff can establish jurisdiction under

New York law, the court must also determine whether the "exercise of personal jurisdiction over

a foreign defendant comports with the due process protections established under the United

States Constitution."  *Licci IV*, 732 F.3d at 168 (first citing *Best Van Lines, Inc.*, 490 F.3d at 242;

and then citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Section 302(a)(2)

provides for long arm jurisdiction where the defendant is alleged to have committed a "tortious

act within the state."  N.Y. C.P.L.R. § 302(a)(2); *see also Glob. Edge Design Inc. v. Michel*, No.

20-CV-9654, 2021 WL 1549990, at *2 (S.D.N.Y. Apr. 20, 2021) (defining basis for jurisdiction

under section 302(a)(2)).  Section 302(a)(3) provides for long arm jurisdiction where the

---

[6]  Because Plaintiffs assert that the Court can exercise specific jurisdiction over
Defendant pursuant to N.Y. C.P.L.R. § 302, the Court does not address whether it can exercise
general jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 301.

defendant "commits a tortious act without the state causing injury to person or property within the state." N.Y. C.P.L.R. § 302(a)(3); *see also DiStefano*, 286 F.3d at 84 (defining the basis for jurisdiction under section 302(a)(3)). However, N.Y. C.P.L.R. §§ 302(a)(2) and 302(a)(3) "explicitly exempt causes of action for the tort of defamation from [their] scope, whether or not such jurisdiction would be consistent with due process protection." *Best Van Lines, Inc.*, 490 F.3d at 246; *Fischer v. Stiglitz*, No. 15-CV-6266, 2016 WL 3223627, at *4 (S.D.N.Y. June 8, 2016) ("Sections 302(a)(2) and (3) of the [N.Y. C.P.L.R], which ordinarily govern personal jurisdiction over anyone who 'commits a tortious act,' do not apply to 'cause[s] of action for defamation.' This 'exception' applies if a plaintiff's claims are all 'based upon [the same] alleged defamatory statements' such that the 'entire complaint sounds in defamation.'" (second and third alterations in original) (first quoting *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); and then citing *Dupont v. N.J. State Police*, No. 08-CV-10220, 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009)).[7] Notwithstanding this explicit exemption, "when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state," "jurisdiction may be acquired under section 302(a)(1)." *Best Van Lines, Inc.*, 490 F.3d at 245–46.

### i. The Court lacks personal jurisdiction over Defendant under section 302(a)(1)

Defendant does not directly address whether the Plaintiffs have met their burden under 302(a)(1) but argues generally that the Court cannot exercise personal jurisdiction over him for the reasons stated above. (Def.'s Mot. ¶¶ 1–4.)

---

[7] Section 302(a)(4) provides for long arm jurisdiction where the non-domiciliary defendant owns, uses, or possesses any real property situated within the state. N.Y. C.P.L.R. § 302(a)(4); *see also Lear v. Royal Caribbean Cruises Ltd.*, No. 20-CV-4660, 2021 WL 129948, at *11 (S.D.N.Y. April 7, 2021) (defining basis for jurisdiction under section 302(a)(4)).

Plaintiffs argue that the Court may exercise jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(1) because "Defendant frequently transacted business in New York through his activities with PAVA, including attending and participating in PAVA and District 2 meetings, business, events and functions in New York State," and "this activity was directly connected to the defamatory [l]etters, which contained false, inflammatory and malicious allegations about PAVA . . . and arose from Defendant's involvement in PAVA." (Pls.' Opp'n 11–12.) In addition, Plaintiffs argue that although Defendant may not have written the Letters in New York, "he knowingly and deliberately chose to . . . [send the Letters to] residents of the state of New York and New York entities with the goal of misleading and influencing these individuals and entities and damaging [Plaintiffs'] reputation in New York." (*Id.* at 12.) Finally, Plaintiffs argue that the Court's exercise of personal jurisdiction over Defendant would not violate Defendant's right to due process because: (1) "Defendant elected to become a member of PAVA, knowing it was a New York not-for-profit organization with headquarters in New York City and no other satellite offices, and to frequently participate in and attend its meetings, functions, events and business in the state of New York over the course of many years;" and (2) Defendant "purposefully targeted a New York audience with his defamatory statements related to his PAVA activities." (*Id.* at 2.)

Section 302(a)(1) permits courts to exercise specific jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1); *see also Chloé*, 616 F.3d at 169 (discussing section 302(a)(1)). "In order to evaluate whether personal jurisdiction exists pursuant to [N.Y.] C.P.L.R. § 302(a)(1), [the Court] must determine: (1) whether [Defendant] transacted any business in New York, and, if so, (2) whether there was

an articulable nexus, or substantial relationship, between the defamatory conduct and the actions

that occurred in New York." *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (citing *Best*

*Van Lines, Inc.*, 490 F.3d at 246; *see also Licci IV*, 732 F.3d at 168 (stating that section 302(a)(1)

has two prongs: (1) the defendant must "have transacted business within the state," either itself

or through an agent, and (2) the cause of action "must arise from that business activity."

(quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir.

2006))); *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574 (2d Cir. 2020) (quoting

N.Y. C.P.L.R. § 302(a)(1)).   Under New York state law, a defendant's lack of physical presence

in the state is not dispositive of whether he transacts business within the state, "so long as the

defendant's activities [within the state] were purposeful and there is a substantial relationship

between the transaction and the claim asserted." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)

(quoting *Deustche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)); *see also Licci*

*ex. rel. Licci v. Lebanese Can. Bank, SAL (Licci II)*, 673 F.3d 50, 61 (2d Cir. 2012) ("A

defendant need not physically enter New York State in order to transact business, 'so long as the

defendant's activities here were purposeful.'" (quoting *Fischbarg*, 9 N.Y.3d at 380));

*C. Mahendra (NY) LLC v. Nat'l Gold & Diamond Ctr., Inc.*, 3 N.Y.S.3d 27, 30 (App. Div. 2015)

("The statute applies where the defendant's New York activities were purposeful and

substantially related to the claim." (citing *D&R Glob. Selections, S.L. v. Bodega Olegario Falcn*

*Pineiro*, 934 N.Y.S.2d 19 (App. Div. 2011))).   "'Purposeful' activities are 'those with which a

defendant, through volitional acts, avails itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws.'" *Eades*, 799 F.3d at 168

*(quoting Fischbarg*, 9 N.Y.3d at 380).

In determining whether a defendant is purposefully transacting business in New York, a court must look at "the quality of the defendant['s] New York contacts." *Fischbarg*, 9 N.Y.3d at 381; *Best Van Lines, Inc.*, 490 F.3d at 246 ("Courts look to 'the totality of the defendant's activities within the forum' to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity' satisfying the first part of the test." (alteration in original) (first quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Invs.*, 510 F.2d 870, 873 (2d Cir. 1975); and then citing *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 (1965))); *see also Licci II*, 673 F.3d at 62 (noting that a single act or "an ongoing course of conduct or relationship in the state may" suffice to establish jurisdiction). "[M]ore limited contacts regarding services to be performed outside New York would not satisfy [section] 302(a)(1)." *Yih*, 815 F. App'x at 574 (citing *Fischbarg*, 9 N.Y.3d at 380).

To satisfy the "arising from" prong, a plaintiff must show that there is a "substantial relationship" or "articulable nexus" between the claim asserted and the actions taken in New York. *Best Van Lines, Inc.*, 490 F.3d at 246; *see also Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci III)*, 20 N.Y.3d 327, 341 (2012) ("[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under [section 302(a)(1)].").

### 1. Plaintiffs successfully allege that Defendant purposefully transacted business in New York

Defendant does not address whether he ever transacted business in New York but contends that he has not entered the state since October of 2018. (*See* Def.'s Mot. ¶ 3.)

Plaintiffs argue that Defendant transacted business in New York "through his activities with PAVA, including attending and participating in PAVA and District 2 meetings, business, events and functions in New York State." (Pls.' Opp'n 11.)

13

"New York courts construe the 'transacting business' test more narrowly in defamation cases than in other contexts . . . [and] do not interpret 'transacting business' to include 'defamatory utterances' sent into New York state, unless the conduct also included 'something more.'" *Penachio*, 461 F. App'x at 5 (quoting *Best Van Lines, Inc.*, 490 F.3d at 248–49)).  Thus, "[i]n defamation cases . . . the 'single act' of uttering a defamation, no matter how loudly, is not a 'transact[ion of] business' that may provide the foundation for personal jurisdiction."  *Best Van Lines*, 490 F.3d at 248 (holding that "when the defamatory publication itself constitutes the alleged 'transact[ion of] business' for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it"); *see also Kim v. Dvorak*, 658 N.Y.S.2d 502, 505 (App. Div. 1997) (concluding that sending allegedly defamatory letters into New York did not constitute a transaction of business and that holding otherwise would "unjustifiably extend the intendment of the Legislature to allow, in limited circumstances, the reach of [New York's] jurisdiction beyond its borders"); *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012) ("Defamation claims are accorded separate treatment to reflect the state's policy of preventing disproportionate restrictions on freedom of expression.").

To satisfy the transacting-business prong, "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts."  *Biro v. Conde Nast*, No. 11-CV-4442, 2012 WL 3262770, at *10 (S.D.N.Y. Aug. 10, 2012) (quoting *SPCA of Upstate N.Y., Inc.*, 18 N.Y.3d at 404), *aff'd*, 622 F. App'x 67 (2d Cir. 2015).  New York Courts have found that regular attendance of business meetings in the forum state constitutes "transacting business" within the meaning of N.Y. C.P.L.R. § 302(a)(1). *See Hansen Realty Dev. Corp. v. Sapphire Realty Grp., LLC*, 104 N.Y.S.3d 59, 60 (App. Div.

14

2019) (finding the defendant "subject to [the] court's jurisdiction pursuant to [the] long arm statute [N.Y. C.P.L.R. 302(a)(1)]" as the defendant's "attendance at and participation in multiple business meetings in New York . . . is sufficient to establish that he was transacting business in New York"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 666 F. Supp. 547, 563 (S.D.N.Y. 1987) ("For purposes of determining whether New York long-arm personal jurisdiction may be exercised, 'transacting business' has been found to include such activity as attendance at meetings held within the forum state." (citing *Am. Contract Designers, Inc. v. Cliffside, Inc.*, 458 F. Supp. 735, 739 (S.D.N.Y. 1978))); *Round One Prods., Inc. v. Greg Page Enters., Inc.*, 566 F. Supp. 934, 937 (E.D.N.Y. 1982) (finding that two dinner meetings, partly social in nature, were sufficient to constitute transacting business under N.Y. C.P.L.R. § 302(a)(1)). *But see Kurzon LLP*, 2014 WL 2862609, at *5 (rejecting the plaintiff's argument that the defendants "purposefully avail[ed] itself of the privilege of conducting business activities within New York so as to be subject to long-arm jurisdiction" by conducting "annual or semi-annual alumni receptions, law school student recruitment forums or international 'fairs' and some student externship placements" as these "types of activities . . . are insufficient to constitute transacting business within the meaning of [N.Y.] C.P.L.R. § 302(a)(1), at least in the defamation context." (citing *SPCA of Upstate N.Y., Inc.*, 903 N.Y.S.2d at 564–65)).

The parties do not dispute that "from 2015 through 2018, Defendant attended and participated in several PAVA national executive board committee meetings at PAVA's New York City headquarters" (Lachowiz Decl. ¶ 12) in his capacity as Secretary and then as First Vice Commander of the national executive board, (*id.* ¶ 5). As Plaintiffs do not rely solely on the fact that Defendant targeted New York residents with the Letters to support the exercise of specific personal jurisdiction over Defendant, but instead allege that Defendant's conduct within

the forum state "included something more" in the form of regularly attending and conducting business at PAVA board committee meetings, the Court finds that Defendant transacted business in New York, satisfying the first prong of the two-prong inquiry under section 302(a). *See Bah*, 2020 WL 614932, at *5 (finding that plaintiff's allegations that non-domiciliary defendants in defamation action were "operating retail stores within the state" and "providing loss prevention services" to those retail locations, "demonstrate[d] a consistent course of commercial conduct within the state . . . sufficient to satisfy the first prong of section 302(a)(1)"); *Fischer*, 2016 WL 3223627, at *3 (finding the plaintiff sufficiently alleges defendant in defamation action maintained contacts with New York "other than the defamation alleged, including: (1) purchasing honey from a New York-based seller; (2) selling honey to retailers located in New York; (3) contracting with a New York-based publisher to publish The Complete Idiot's Guide to Beekeeping; and (4) attending conferences in New York").

### 2. Plaintiffs fail to demonstrate the cause of action "arises from" Defendant's activities in New York

Defendant does not directly address whether there is a substantial relationship between his New York activities and the allegedly defamatory conduct, but indicates that "[t]he last time . . . [he] visited New York was in October [of] 2018" and that "the letters from Defendant . . . were written on the personal computer located in the home of Defendant in Massachusetts." (Def.'s Mot. ¶¶ 3–4.)

Plaintiffs argue that Defendant's activities in New York were "directly connected to the defamatory [Letters]," creating a sufficient nexus to support the Court's exercise of personal jurisdiction over Defendant. (Pls.' Opp'n 11.)

New York Courts have found defamatory conduct "arises from" business activity in the forum state where the defamatory statement was researched, written, published, or produced in

16

New York.[8] *See Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 661–62 (S.D.N.Y. 2020)

(finding "New York courts may exercise personal jurisdiction in defamation cases," where "at

least part of the defamatory content was created, researched, written, developed, or produced in

New York" (collecting cases)); *Shamoun v. Mushlin*, No. 12-CV-3541, 2014 WL 12776779, at

*6 (S.D.N.Y. Mar. 26, 2014) ("Plaintiff must show that 'the defendant engaged in some

purposeful activity within New York that was directly related to the creation of the allegedly

defamatory work,' such as research, writing, printing, or broadcasting." (quoting *Biro*, 2012 WL

3262770, at *10))); *Symmetra Pty Ltd. v. Human Facets, LLC*, No. 12-CV-8857, 2013 WL

2896876, at *6 (S.D.N.Y. June 13, 2013) ("[A] court may exercise jurisdiction over a claim for

defamation where 'the defendants' out-of-state conduct involve[s] defamatory statements

projected into New York and targeting New Yorkers, . . . [and] the conduct also include[s]'

further acts solidifying the defendant's connection with New York . . . such as staying in New

---

[8] In *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court rejected the argument that specific jurisdiction only attaches where the "defendant's forum conduct *gave rise* to the plaintiff's claims," holding that "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do[ but that to the contrary] . . . [the] most common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum.'" 592 U.S. ---, ---, 141 S. Ct. 1017, 1026 (2021). Although *Ford Motor Co.* appears to expand the scope of specific jurisdiction, *see, e.g.*, *Zimmerman v. Cornell Outdoor Education*, No. 20-CV-892, 2021 WL 1240454, at *4 n.2 (N.D.N.Y. 2021), in the defamation context, courts have construed New York's "arising from" requirement more narrowly because of the need to preserve First Amendment protections. *See, e.g.*, *Symmetra Pty Ltd. v. Human Facets*, No. 12-CV-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) ("In addition to holding that a single defamatory statement is insufficient to give rise to long-arm jurisdiction, New York jurisprudence otherwise imposes a stricter standard on the transaction-of-business and arising-from prongs of section 302(a)(1) in defamation cases. As to claims for defamation, 'particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue.'" (quoting *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 405 (2012))).

York to research a defamatory book or news broadcast" (second, third, and fourth alterations in original) (quoting *Best Van Lines, Inc.*, 490 F.3d at 249)); *Legros v. Irving*, 327 N.Y.S.2d 371, 374 (App. Div. 1971) (exercising jurisdiction over a plaintiff's defamation claim because "all the significant actions culminating in the publication of the [allegedly defamatory] book occurred in New York," including research and printing, as well as the negotiation and execution of the publishing contract); *cf. Fischer*, 2016 WL 3223627, at *7 (granting defendants' motion to dismiss for lack of personal jurisdiction because "[i]t is clear that [d]efendants do not buy and sell honey or engage in other commercial activities in New York 'in order to . . . generate [allegedly defamatory] material to publish' about [p]laintiff" (third alteration in original) (quoting *SPCA of Upstate N.Y., Inc.*, 18 N.Y.3d at 405)); *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015) (granting defendant's motion to dismiss for lack of jurisdiction in part, because plaintiff failed to show that defendant's employees "who assisted in the [allegedly defamatory] broadcast interviewed any people in New York or relied on any sources in New York in connection with the creation or broadcast"), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017); *SPCA of Upstate N.Y., Inc.*, 18 N.Y.3d at 405 (finding that New York courts could not exercise jurisdiction over the defendant as she "did not visit New York in order to conduct research, gather information or otherwise generate [the allegedly defamatory] material to publish on the group's [website]").

In addition, several courts in New York have found that a significant lapse of time between the defendant's contact with the forum state and publication of the allegedly defamatory statements diminishes the nexus between the claim asserted and the defendant's contact with New York. *See Wietsman v. Levesque*, No. 17-CV-0072, 2019 WL 7503022, at *5 (N.D.N.Y.

18

Jan. 11, 2019) ("Courts have found that when an extended period of time separates the out-of-state defendant's defamatory statements from the time that the defendant had spent in New York, the relationship between the statements and New York activities is too attenuated to support jurisdiction under section 302(a)(1).").

The Court finds that the nexus between Defendant's New York activities, including his attendance of PAVA national executive committee meetings and other PAVA events, and the allegedly defamatory statements is too attenuated to support the exercise of jurisdiction under section 302(a)(1). Plaintiffs do not allege that Defendant visited New York for the purpose of gathering information about PAVA or affiliated individuals in preparation of his subsequent defamatory letters. (*See generally* Compl.; Pls.' Opp'n.) To the contrary, Plaintiffs allege that from 2015 to October of 2018, Defendant attended PAVA "meetings, business, events and functions" in his capacity as a member of the PAVA national executive board and that it was only after his expulsion from PAVA and the cessation of his related-activities in New York, that Defendant circulated the first defamatory email on July 11, 2019.[9] (Pls.' Opp'n 4, 11); *see Sparrow Fund Mgmt. LP v. MiMex Grp., Inc.*, No. 18-CV-4921, 2019 WL 1434719, at *12 (S.D.N.Y. Mar. 31, 2019) (finding plaintiff "fails to plead facts supporting a sufficient connection between its underlying defamation . . . claims and any actionable New York business

_____

[9]  The Court notes that although the Plaintiffs allege that Defendant "voiced his grievances concerning PAVA" at the October of 2018 national executive board committee meeting, Plaintiffs do not allege that these statements were made with intent to defame. (*See* Lachowiz Decl. ¶ 9.) Likewise, while Plaintiffs allege that Defendant circulated "confidential minutes of an informal meeting of PAVA's National Executive Board" with the January 2020 Letter, (*see* Compl. ¶ 17), Plaintiffs do not allege that Defendant attended the relevant meeting with the intent to gather information for defamatory purpose as necessary to support jurisdiction under section 302(a)(1). *See Fischer v. Stiglitz*, No. 15-CV-6266, 2016 WL 3223627, at *7 (S.D.N.Y. June 8, 2016) ("[A]bsent a quite substantial connection to New York, a defendant must engage in the relevant New York-based activity with the *intent* to create the allegedly defamatory work for jurisdiction to lie under [N.Y. C.P.L.R. § 302(a)].").

'transaction' by [the defendant as] . . . [t]he plaintiff does not identify any actions that [the defendant] took in New York in his personal capacity that were taken for the purpose of defaming [the plaintiff]" (citing *SPCA of Upstate N.Y., Inc.*, 18 N.Y.3d at 403)).

Moreover, the parties do not dispute the nine-month gap between Defendant's contact with New York and his publication of the July 2019 Letter. This lapse of time weighs against the Court's exercise of jurisdiction over Defendant. *See Nardiello v. Allen*, No. 07-CV-0580, 2007 WL 4119182, at *2–3 (N.D.N.Y. Nov. 16, 2007) (finding that the claim did not arise out of defendant's contact with New York through defendant's "'travel[] to board meetings in Lake Placid and regular[] participat[ion] in . . . conference calls' which originated from the offices in Lake Placid" as plaintiff's defamation claim arises out of the emails sent by [the defendant] in December of 2005 and January of 2006, not out of [the defendant's] earlier contacts with New York" between "2002 and November of 2005"); *cf. Penachio*, 461 F. App'x at 6 (dismissing defamation claim because "defendants' alleged defamatory comments were not made while they were physically present in New York, but rather were published after they had returned to their out-of-state domiciles[ and] . . . defendants' interaction with New York during the publication of the [allegedly defamatory] videos was too marginal to establish the required articulable nexus").

Accordingly, the Court finds that Plaintiffs' cause of action does not arise from Defendant's business activities in New York, but from the defamatory Letters Defendant drafted and sent from his home in Massachusetts, nine months after his last contact with the forum state and expulsion from PAVA. Thus, Plaintiffs have failed to allege an articulable nexus between the defamatory emails and Defendant's activities in New York to support the exercise of personal jurisdiction.

## III.  Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the

Complaint.  The Clerk of Court is respectfully directed to mail a copy of the decision to

Defendant and close this case.

Dated:  July 23, 2021
         Brooklyn, New York

                                   SO ORDERED:


                                       s/ MKB
                                   MARGO K. BRODIE
                                   United States District Judge